IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| Energy Heating, LLC, and Rocky Mountain Oilfield Services, LLC, | ) ) ) | Case No. 4:13-cv-10 |
| Plaintiffs, | ) ) ) | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | ) ) | |
| Heat On-the-Fly, LLC, and Super Heaters North Dakota, LLC; | ) ) | |
| Defendants. | | |

## INTRODUCTION AND SUMMARY OF HOLDING

Before the Court are two motions for partial summary judgment brought by Plaintiffs Energy Heating, LLC ("Energy Heating") and Rocky Mountain Oilfield Services, LLC ("Rocky Mtn.") (Docs. #32, 59). Plaintiffs have filed a complaint seeking, inter alia, a declaration that they do not infringe Defendants' trademark HEAT ON-THE-FLY and cancellation of Defendants' registration for that mark. Defendants have filed counterclaims against Plaintiffs asserting direct and indirect infringement of U.S. Patent No. 8,171,993 ("the '993 patent"). Plaintiffs now move for summary judgment on their trademark claims and Defendants' direct infringement counterclaim.[1] Because Plaintiffs have not proven as a matter of law that the HEAT ON-THE-FLY mark is generic, Plaintiffs' motion for summary judgment on the trademark claims is DENIED. With respect to Defendants' counterclaim of direct infringement, Defendants cannot demonstrate that Plaintiffs

---

[1] In their first motion for summary judgment (Doc. #32), Plaintiffs also sought dismissal of Defendants' counterclaim for indirect infringement of the '993 patent under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs acknowledge Defendants have cured the alleged deficiency in their First Amended Counterclaim (Doc. #56), rendering their motion to dismiss the indirect infringement claim moot. (Doc. #60).

1

directly infringe the method or apparatus claims disclosed in the '993 patent. Accordingly, with respect to claims 1, 13, 36, 63, and 86 of the '993 patent, Plaintiffs' motion for summary judgment on the direct infringement counterclaim is GRANTED, and the associated portions of that claim are DISMISSED. A fact question remains as to whether Plaintiffs directly infringe the system claim disclosed in the '993 patent. Plaintiffs' motion for summary judgment with respect to direct infringement of claim 26 of the '993 patent is thus DENIED.

## FACTS

Defendant Heat On-The-Fly ("HOTF") is the owner of the '993 patent, entitled "Water Heating Apparatus for Continuous Heated Water Flow and Method for Use in Hydraulic Fracturing."[2] (Doc. #1-1). The '993 patent prescribes a "method and apparatus for the continuous preparation of heated water flow for use in hydraulic fracturing" or, as it is more commonly known, "fracking." (Id. at 15). Fracking entails pumping a mixture of heated water, chemicals, and sand into a geological formation, causing the formation to fracture and release oil or gas deposits into a surrounding well. (Id.). Prior to the '993 patent, the common method of heating water for fracking projects involved pumping source water into numerous tanks and raising the temperature of each tank individually the night before commencing fracking operations. (Id.). Due to the time lapse involved, tanks generally had to be overheated to account for thermal loss. (Id.). The '993 patent addresses this shortcoming by providing continuously heated water during the fracking process. (Id.) As cool water is pumped into the mixing mechanism, a portion of the water is diverted through

---

[2] A Request for Ex Parte Reexamination of the '993 patent was filed by an unnamed third party on September 14, 2012, requesting reexamination of claims 1-12 of the '993 patent. (Doc. #27). The United States Patent and Trademark Office ("USPTO") granted the Request on December 7, 2012. (Id.). Reexamination of the '993 patent is still pending. (Id.).

separate piping into a heating unit, where it is superheated and then reintroduced to the ambient water flow in the mixing mechanism. (Id. at 15–16). The newly heated mixture is then pumped into the formation. (Id.).

HOTF refers to its patented process as heating water "on-the-fly." (See Doc. #76, p. 15). In 2010, HOTF obtained United States Trademark Registration No. 3,811,923 for the mark HEAT ON-THE-FLY for use in connection with oil well fracturing. (Doc. #62-2). Defendant Super Heaters North Dakota ("Super Heaters"), a company that provides heated water for fracking operations in North Dakota, is a current licensee of both the '993 patent and the HEAT ON-THE-FLY mark. (Doc. #27, p. 2– 4).

Plaintiffs Energy and Rocky Mtn. are joint venturers in the field of water delivery in North Dakota. (Id. at 2). Defendants believe Plaintiffs' portable water heaters infringe the '993 patent. Defendants allegedly reported the suspected infringement to Plaintiffs' customers. (Id. at 3). As a result, Plaintiffs now bring this suit, seeking (1) a declaration of invalidity regarding all or part of the '993 patent, (2) a declaration of Plaintiffs' non-infringement of the '993 patent, (3) a declaration of Plaintiffs' non-infringement of the HEAT ON-THE-FLY mark, (4) an order of cancellation of the HEAT ON-THE-FLY mark, and alleging (5) tortious interference with existing or prospective business relationships, and (6) tortious interference with contracts. (Id. at 5–6). Defendants seek injunctive relief and money damages on their counterclaims of direct and indirect infringement of the '993 patent. (Doc. #23). Plaintiffs have moved for partial summary judgment on their trademark claims and Defendants' direct infringement counterclaim.

## DISCUSSION

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the

3

non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Warner Bros. Entm't, Inc. v. X One X Prods., 644 F.3d 584, 591 (8th Cir. 2011); Fed. R. Civ. P. 56(a). There is no genuine issue for trial when the record as a whole "could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson & Assocs. v. Jung, 422, F.3d 630, 638 (8th Cir. 2005).

**I.      Validity of the HEAT ON-THE-FLY mark.**

"A term for which trademark protection is claimed will fall in one of four categories: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful." WSM, Inc. v. Hilton, 724 F.2d 1320, 1325 (8th Cir. 1984). "A generic mark refers to the common name or nature of an article, and is therefore not entitled to trademark protection." Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc., 426 F.3d 1001, 1005 (8th Cir. 2005). Plaintiffs contend the phrase "heat on the fly" is generic and, therefore, seek (1) a declaration that their use of this phrase does not infringe Defendants' trademark rights and (2) cancellation of U.S. Trademark Registration No. 3,811,923. Registration of a trademark, however, creates a rebuttable presumption of a mark's validity and distinctiveness. Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 869 (8th Cir. 1994); 15 U.S.C. § 1115(a). This is especially so when the USPTO registers a mark without requiring proof of secondary meaning. Accordingly, Plaintiffs must not only overcome a presumption of nongenericness, but also show there is no genuine issue of material fact as to the mark's genericness.

The Lanham Act provides "[t]he primary significance of the registered mark to the relevant

public . . . shall be the test for determining whether the registered mark has become [generic]." 15 U.S.C. § 1064(3). Plaintiffs contend that within the oil and gas industry, the phrase "heat on the fly" describes a well-known method of heating water—also referred to as "in line," "on demand," or "tankless" water heating—without reference to any particular source. (Doc. #60, p. 6). In support, Plaintiffs point to allegedly generic uses of the phrase throughout Defendants' depositions and website materials, industry usage, and Plaintiffs' own depositions.

With regard to Defendants' depositions and website materials, Plaintiffs argue Defendants consistently use the phrase "heat on the fly" to refer to a process of heating water rather than as a designation of source. For example, HOTF designee Mark Hefley stated he first heard the phrase "heat on the fly" when a customer asked him to heat fluid on the fly in 2006 (before Hefley had invented the method disclosed in the '993 patent). (Doc. #62-5, p. 10). Similarly, Super Heaters' designee Ron Lyles defined "heat on the fly" as "the heating of water as it's transferred" and stated any company performing this process would be "heating on the fly." (Doc. #62-4, p. 15, 37). HOTF's website also provided the following explanation of its services in the "About Us" section:

> Our engineers began to field test the idea of heating water as it flowed from the source- before it got to the frac tank. Heating water on the fly as it moved from source to fracing tank to the wellbore became the holy grail for operators in the deep gas shales. . . . The process of configuring the super heating units, tying in the source water directly to fracing operations on an as-needed basis became known as Heat-On-The-Fly® and is now a patented process for heating water for hydraulic fracturing.

(Doc. #62-7, p. 3–4).

While Defendants appear to alternate between use of the mark as a descriptor and as a designation of source, "the test . . . is what consumers, not persons in the trade, understand the term to be." <u>Anheuser-Busch Inc. v. Stroh Brewery Co.</u>, 750 F.2d 631, 638 (8th Cir. 1984). Defendants'

5

own statements in a deposition context do not establish the "primary significance of the registered mark to the relevant public." 15 U.S.C. § 1064(3). With regard to Defendants' website, the linguistic and visual distinctions between "[h]eating water on the fly" and "Heat-On-The Fly®" illustrate, at a minimum, an attempt to distinguish between a general process and Defendants' unique product. Whether this distinction is sufficient to sever Defendants' mark from the generic process of "heating water on the fly," and whether that distinction is reflected in the minds of consumers, remain open questions of fact.

Plaintiffs argue industry usage confirms the genericness of the phrase "heat on the fly." In support, they provide numerous examples of patents and industry publications using the phrases "on the fly" or "heat water on-the-fly." As the Federal Circuit noted in In re American Fertility Society, however, genericness cannot be established simply by "cit[ing] definitions and generic uses of the constituent terms of a mark, or in this case, a phrase within the mark, in lieu of conducting an inquiry into the meaning of the disputed phrase as a whole." 188 F.3d 1341, 1347 (Fed. Cir. 1999). "The correct legal test for genericness . . . requires evidence of the genus of goods or services at issue and the understanding by the general public that the mark refers primarily to that genus of goods or services." Id.

Industry usage of "on the fly," a mere "phrase within a mark," cannot establish the genericness of Defendants' mark on the whole. See id. The phrase "heat water on-the-fly" strikes closer to the heart of Defendants' mark, but consistent addition of the word "water" in industry usage suggests the phrase "heat on the fly" alone does not fully describe the nature of Defendants' service or product. (See, e.g., Doc. #62-6; 63-10). Among Plaintiffs' cited examples, even the phrase "heat water on-the-fly" does not often stand alone. A patent application for an "Oil-Fired Frac Water

6

Heater," for example, describes a system "to heat water-on-the-fly (i.e., directly from the supply source to the well head)." (Doc. #62-6). The inclusion of a definition for the phrase "heat water on-the-fly" suggests strongly that the less descriptive phrase "heat on the fly" does not represent the "genus of goods or services" offered by Defendants. This conclusion is bolstered by Plaintiffs' acknowledgment that within the oil and gas industry, the process of heating water on the fly can also be described as "in line," "on demand," or "tankless" water heating. (Doc. #60, p. 6). The availability of alternative descriptors is relevant to a determination of genericness. See, e.g., Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church, 634 F.3d 1005, 1011 (8th Cir. 2011) (noting that competitor could "accurately describe its services without using [owner's] marks"). Thus, while industry usage of the phrases "on the fly" and "heat water on-the-fly" may ultimately detract from the strength of Defendants' mark, such use does not establish its genericness as a matter of law.

Finally, Plaintiffs offer their own deponents' testimony to suggest HEAT ON-THE-FLY refers generically to a common process. This self-serving claim is of limited probative value. More importantly, the cited examples do little to support Plaintiffs' cause. For instance, when asked what types of heating operations Rocky Mtn. offers, its designee Matthew Mason testified, "[S]ome operations are in-line and others are, uh, you know, preheats." (Doc. #63-13, at p. 14). Mason later testified, "[W]e – you know, me, personally, have been doing, uh, what – what Mr. Lyles [of Super Heaters] is calling heat on-the-fly since 2007." (Doc. #63-13, at p. 54). While Mason's testimony confirms a familiarity with the concept of "heating on the fly," he appears to associate that term with Super Heaters and to refer to Rocky Mtn.'s comparable service more frequently as "in-line heating."

7

Categorization of a trademark is a question of fact. WSM, 724 F.2d at 1326. So, too, are the questions of how a particular word has been used and how it has been understood by the public. Id. at 1325. Because questions of fact remain as to how the relevant public regards Defendants' mark, Plaintiffs are not entitled to summary judgment on their claim of non-infringement by virtue of genericness. For the same reason, Plaintiffs' request that the Court order cancellation of Defendants' trademark registration is denied.

As an alternate ground for cancellation, Plaintiffs argue that failure to use a mark as claimed in a registration for three years is "prima facie evidence of abandonment." 15 U.S.C. § 1127. Defendants registered HEAT ON-THE-FLY for use in connection with oil well fracturing. Because Defendants provide only water heating services and do not personally engage in fracking, Plaintiffs claim Defendants' mark was fraudulently obtained and has since been abandoned. Based on the voluminous record associating Defendants' patented process, business relations, and marketing efforts with the fracking industry, Plaintiffs cannot credibly argue Defendants' mark has not been used in connection with oil well fracturing. Accordingly, Plaintiffs' motion for summary judgment on this claim is denied.

## II.     Direct infringement of the '993 patent.

Plaintiffs have also filed a motion for summary judgment with respect to Defendants' counterclaims of direct infringement of the '993 patent. Of the '993 patent's eight independent claims, Defendants accuse Plaintiffs of infringing six: claims 1, 13, 26, 36, 63, and 86. (Doc. #35-3). Of the six independent claims, three are method claims (1, 13, and 63) and three are system or apparatus claims (26, 36, and 86). The method claims describe a "method of fracturing a formation producing at least one of oil and gas." (Doc. #1-1). The apparatus claims describe a "hydraulic

fracturing apparatus" (claims 36 and 86) and an "oil well hydraulic fracturing system" (claim 26). (Id.). Defendants allege both direct and indirect infringement of each claim. Plaintiffs challenge only the claims of direct infringement in their motion for summary judgment.

### A. Method Claims

Defendants' claimed method of "fracturing a formation" is typically performed by three separate entities in a given fracking operation: a water transfer company, a water heating company, and a pressure pumping company. (Doc. #76-3, p. 3). Typically, the water transfer company provides cool water from a water source and sets up piping to transfer the water first to the heating company and then into the mixing tanks. (Id.). The water heating company then heats the water to the desired temperature. (Id.). Finally, the pressure pumping company combines the heated water with chemicals and proppants and pumps the mixture down into the formation. (Id.).

The Federal Circuit recently clarified the standard where alleged infringement is divided between multiple parties. "In the context of a method claim, [direct infringement] means the accused infringer must perform all the steps of the claimed method, either personally or through another acting under his direction or control." Akamai Techs., Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1307 (Fed. Cir. 2012). "Direct infringement has not been extended to cases in which multiple independent parties perform the steps of the method claim." Id. Defendants' claimed method includes steps such as "adding a selected proppant to the mix" and "transmitting the mix . . . into a formation," which are undisputedly performed by third parties. (See Docs. #1-1; 76-3). Because no single party has committed all the required acts necessary to constitute infringement, Plaintiffs correctly assert that Defendants' claims of direct infringement fail as a matter of law as they relate to the '993 patent's method claims.

9

Defendants appeared to concede as much in their Patent Initial Disclosures. (See Doc. #35-3, p. 1 ("If Akamai is expanded to clarify that multiple parties can together directly infringe under 35 U.S.C. §271(a) when one party performs some steps and another party or parties performs the other steps of a method claim, then plaintiffs likewise directly infringe.")). In their Memorandum in Opposition to Plaintiffs' Combined Motions for Summary Judgment, however, Defendants argue "a reasonable jury could find that the plaintiffs direct or control the activities of the water transfer company and the pressure pumping company to perform the steps of the asserted method claims." (Doc. #76, p. 17). In support, Defendants advance various arguments relating to the centrality of the water heating function to the overall claimed method. (See id. at 17–19). Defendants' arguments miss the mark. "Absent an agency relationship between the actors or some equivalent, . . . a party that does not commit all the acts necessary to constitute infringement has not been held liable for direct infringement." Akamai, 692 F.3d at 1307; see also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1311 (Fed. Cir. 2005) (declining to recognize direct infringement of method claim where final step of method was performed by third party not acting as agent of alleged infringer). Because the water transfer and pressure pumping companies do not act as Plaintiffs' agents or some equivalent in performing their steps of the '993 methods, Defendants cannot prevail on their claims of direct infringement of those methods.

**B.    System and Apparatus Claims**

Defendants allege Plaintiffs have also directly infringed their system and apparatus claims by making and using claimed elements of the '993 patent. See 35 U.S.C. § 271(a) (defining a direct infringer as one who makes, uses, offers to sell, sells, or imports a patented invention within the United States). Because critical elements of the patented system are provided by third parties (as

discussed above), Plaintiffs argue they cannot directly infringe these claims as a matter of law.

### 1. Use of a System or Apparatus

The Federal Circuit recently addressed the issue of infringement by "using" a system or apparatus that includes elements in the possession of more than one actor in Centillion Data Systems, LLC v. Qwest Communications Int'l, Inc., 631 F.3d 1279, 1283 (2011). There, the system claims at issue involved software comprised of two components: a "back-end" component maintained by a service provider and a "front-end" application purchased and installed on a personal computer by an end user. Id. at 1281. Unlike direct infringement of a method claim, the court determined that to "use" a claimed system, a party need not "exercise physical or direct control over each individual element of a system." Id. at 1284. Rather, an infringing user is one who "put[s] the invention into service, *i.e.*, control[s] the system as a whole and obtain[s] benefit from it." Id. Under this definition, the court determined the end users of the software at issue—and not the accused service provider—"used" the patented system by "causing the system as a whole to perform [the] processing and obtaining the benefit of the result." Id. at 1285. As a matter of law, the service provider "never 'use[d]' the entire claimed system because it never put[] into service the personal computer data processing means." Id. at 1286. It merely supplied software for the customer to use, which the court held did not constitute "use." Id.

Like the software at issue in Centillion, Defendants' water heating system and apparatus involve components in the possession of multiple parties. Claim 26 of the '993 patent, for example, discloses a system comprised in part of "a source of cool or cold water" and "a mixing tank," both of which are provided by parties other than Plaintiffs in a given fracking operation. (Doc. #1-1; 76-3). Although this does not bar an allegation of direct infringement as it does under Defendants'

method claims, the Court must determine whether Plaintiffs used the system by "control[ling] the system as a whole and obtain[ing] benefit from it." Id. at 1284.

The '993 patent claims an "oil well hydraulic fracturing system" and a "hydraulic fracturing apparatus" for the purpose of extracting oil or gas. (Doc. #1-1). The system can be summarized as follows: (1) water is pumped from a source; (2) the water is heated; (3) the heated water is transported to a mixing tank; (4) the heated water is mixed with a proppant or chemical; and (5) the mixture of heated water and proppant is pumped into a subterranean formation. (Doc. 34, ¶ 2). Because they perform only an intermediary function in the overall hydraulic fracturing system, Plaintiffs contend they do not "put the invention into service." Id. Moreover, because they do not engage in fracking or ultimately obtain the extracted gas or oil, Plaintiffs contend they do not "control the system as a whole and obtain benefit from it." Id.

Defendants argue, in turn, that because Plaintiffs' activities during a fracking operation are the "key activities that allow the claimed invention to work," Plaintiffs are responsible for controlling the system as a whole. (Doc. #80, p. 12). This analysis misstates the appropriate standard for "use" under Centillion and § 271(a). The court in Centillion did not evaluate which party provided the most salient aspect of the patented system. If it had engaged in such an inquiry, surely the manufacturer of the software would have played a more "key" role with respect to the claimed invention than the end user who merely purchased and installed it. Instead, the court held, "[w]hile Qwest may make the back-end processing elements, it never 'uses' the entire claimed system because it never puts into service the personal computer data processing means. Supplying the software for the customer to use is not the same as using the system." Id. at 1286.

Plaintiffs' role in Defendants' claimed system is analogous to the service provider's role in

Centillion. Plaintiffs supply heated water to a pressure pumping company, which Defendants concede then provides the final components of the claimed system by "receiv[ing] the heated water . . . and mix[ing] the hot water with proppants and possible other things and then pump[ing] the mixture downhole into a formation in order to fracture the formation to obtain oil or natural gas." (Doc. #80, p. 14). While providing hot water is undoubtedly a key role in completion of the overall system, Plaintiffs never use the entire claimed system because they never put into service the mixing or pumping components. Supplying hot water for the pressure pumping company to use is not the same as using the system. See id.

This is so even though Plaintiffs' heated water is provided continuously throughout the fracking operation, rather than as a discrete product transferred into the possession of a subsequent actor. (Doc. #80, p. 15). Although the water transfer, water heating, and pressure pumping functions occur almost simultaneously, at the point when Plaintiffs have completed their water heating function, multiple components of the '993 system remain unfulfilled. In Centillion, the court held that even the back-end system's automatic generation of periodic reports did not constitute use on the part of the manufacturer because "but for the customer's actions [of subscribing], the entire system would never have been put into service." Id. at 1285. Here, but for the pressure pumping company's actions of mixing and pumping the water downhole, the claimed fracking system would never be put into service—Plaintiffs would merely have succeeded in making hot water, not "an oil well hydraulic fracturing system" or "a hydraulic fracturing apparatus." Accordingly, Defendants cannot demonstrate that Plaintiffs directly infringe the '993 patent by using the claimed system or apparatus.

13

## 2. Making a System or Apparatus

Defendants alternatively contend that Plaintiffs directly infringe the '993 patent by "making" the claimed system and apparatus. In Cross Medical, the Federal Circuit considered the issue of direct infringement by "making" a claimed system or apparatus. 424 F.3d 1293 (Fed. Cir. 2005). A patent holder developed orthopedic surgical implants used to stabilize and align the bones of a patient's spine. Id. at 1297. The claimed system and apparatus described a fixation device comprised, in part, of "an anchor seat means which has a lower bone interface operatively joined to said bone segment." Id. at 1299. The court determined this structural limitation rendered the apparatus complete only when the implant came into contact with bone, not when the implant merely became capable of operative joinder to bone. Id. at 1306, 1310. Because surgeons, and not the implant manufacturer, ultimately connected the implants with bone, the court held the manufacturer did not "make" the claimed apparatus and, therefore, did not directly infringe. Id. at 1311. Even where the manufacturer's representatives were present during surgery and identified instruments for use by the surgeon, the court held the manufacturer did not directly infringe because the surgeons did not act as the manufacturer's agents. Id.

For reasons similar to those discussed in the "use" section above, Plaintiffs contend they do not "make" Defendants' system or apparatus. The final limitation of claims 36 and 86 (Defendants' apparatus claims) describes a "flowline that transmits the mix of cool or cold and heated water and proppant from the tank into a formation producing at least one of oil and gas." (Doc. 1-1). Applying the court's rationale from Cross Medical, Defendants' claimed apparatus is not complete until the final limitation is met and the heated fracking mixture is transmitted into a geological formation to produce oil or gas. See id. at 1310 ("Literal infringement requires that each and every limitation set

forth in a claim appear in an accused product.") (internal citation omitted). This limitation is fulfilled not by Plaintiffs, but by the pressure pumping company that pumps the fluid downhole. Because Plaintiffs do not make an apparatus that meets this limitation, they do not directly infringe claims 36 and 86 of the '993 patent.

Defendants claim that Plaintiffs are often the last of the three parties to arrive at a fracking operation and, therefore, complete the claimed invention. Specifically, Defendants contend the "flowline that transmits the mix of cool or cold and heated water and proppant from the tank into a formation" would already be in place at the time Plaintiffs connect their flowlines to the mixer. However, it is not Plaintiffs' connection of its flowlines that triggers transmission of the fracking fluid into the geological formation. This connection merely creates an apparatus that is *capable* of satisfying the final limitation. The court held in Cross Medical that this is insufficient. Id. Based on the language of Defendants' apparatus claims, infringement occurs only when actual transmission of the fracking fluid begins. Defendants' allegations of direct infringement of their apparatus claims thus fail as a matter of law.

Defendants' only remaining direct infringement counterclaim concerns the '993 patent's system claim. "[T]o 'make' [a] system under § 271(a), [an alleged infringer] would need to combine all of the claim elements"—i.e., to "complete[] the system." Centillion, 631 F.3d at 1288. Claim 26 of the '993 patent recites the following elements: a transportable heating apparatus; a source of cool water; a mixer; a first flowline from the heater to the mixer; a second flowline; and a mixing tank. (Doc. #1-1; 80, p. 9). Notably, Defendants' system claim does not contain the downhole pumping limitation included in its apparatus claims. Without this limitation, Plaintiffs' role as the last to connect its equipment may render it the party "to combine all of the claim elements" and "complete

15

the system." At a minimum, a fact question remains as to whether Plaintiffs directly infringe Defendants' system claim. Plaintiffs' motion for summary judgment with respect to this claim is denied.

## CONCLUSION

Because they cannot demonstrate as a matter of law that HEAT ON-THE-FLY is generic, Plaintiffs' motion for summary judgment on their trademark claims is **DENIED**. Plaintiffs also cannot establish as a matter of law that they do not "make" the '993 patent's system claim. Because a question of fact remains on that issue, Plaintiffs' motion for summary judgment as to direct infringement of Defendants' system claim (claim 26) is also **DENIED**.

Defendants' remaining counterclaims of direct infringement of the '993 patent (regarding claims 1, 13, 36, 63, and 86) are **DISMISSED**, and Plaintiffs' motion for summary judgment on those claims is **GRANTED**. Defendants' motion for a hearing is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated this 6th day of November, 2013.

           /s/ Ralph R. Erickson
           Ralph R. Erickson, Chief Judge
           United States District Court