IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| Energy Heating, LLC, an Idaho limited liability company; Rocky Mountain Oilfield Services, LLC, an Idaho limited liability company, | | |
| Plaintiff/Counterclaim Defendants, | | |
| vs. | | Civil Case No. 4:13-cv-10 |
| Heat On-The-Fly, LLC, a Louisiana limited liability company, and Super Heaters North Dakota, a North Dakota limited liability company, | | **ORDER ON MOTIONS *IN LIMINE* AT DOCKET NUMBERS 458, 460,462, 465, 469, 471, 473, 475, and 477** |
| Defendants, | | |
| and | | |
| Heat On-The-Fly, LLC, a Louisiana limited liability company, | | |
| Counterclaimant. | | |

Heat On-The-Fly, LLC, a Louisiana limited liability company,

      Third-Party Plaintiff/Counterclaim Defendant,

vs.

Marathon Oil Corporation,

      Third-Party Defendant/ Counterclaimant.

## INTRODUCTION AND SUMMARY

Before the court are nine motions *in limine* filed by the parties in preparation for the

trial set to begin August 18, 2015. These motions are filed at docket numbers 458, 460, 462,

465, 469, 471, 473, 475, and 477.  The court has carefully considered the motions and issues the following Orders.

## DISCUSSION

I.   **DOCKET #458 - DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE THE USE OF DEROGATORY, DISPARAGING, AND/OR PEJORATIVE REFERENCES ABOUT HEAT ON-THE-FLY, LLC**

Defendants/Counterclaimants Heat On-The-Fly, LLC, ("HOTF") and Super Heaters North Dakota, LLC, ("Super Heaters") move the court to prevent the parties from referring to by terms with pejorative effect.  Among the terms movants object to are "patent troll", "pirate", "patent assertion entity", "shell corporation", "privateer", "bounty hunter", "bandit", "paper patent", "stick up", "shakedown", "playing the lawsuit lottery", "corporate shell game", "company that doesn't make anything", "company that doesn't sell anything", and "company that doesn't do anything".  The concern is that the terms are more prejudicial than probative and may have an unfair influence on the jury.  The court agrees that such terms as bandit and bounty hunter carry negative connotations and, in fact, do not really have much descriptive value.  It appears from their response, that the other parties do not intend to use such terms and agree to refrain from using the term "patent troll".  The court agrees that the parties shall avoid all terms that are not only pejorative but, like "patent troll", actually contain a legal conclusion.

The court, however, will not prevent any of the parties from using terminology that accurately describes the other parties' businesses.  Plaintiffs and Marathon object to the court issuing a blanket order prohibiting the use of derogatory terms because they fear they will not be allowed to properly describe the other parties.  However, if HOTF discontinued its activity in the business of heating water and became merely a licensing entity for the use

of the patent, the parties can accurately portray the business without using phrases that carry negative connotations.  Clearly HOTF was, at an earlier time, in the business of making and doing things, as it constructed water heating apparatuses and heated water for use in fracking.  As a licensor, HOTF sold the rights to use the patent, so it is not accurate to describe it as a company that does not "do anything" or a company that "does not sell anything".  There is nothing illegal or immoral about protecting patent rights and selling the right to use a patented product or service.

Although the parties to this action are currently litigants in court, embroiled in a dispute that sometimes seems to border on the bitter, the parties are all entities that have engaged in legitimate services related to the production of oil.  There is no reason for the parties to resort to any terminology that contains meaning or connotation that goes beyond accurately describing the activities of the other parties.[1]

Marathon accurately points out that "the Court has multiple tools to prohibit prejudicial statements during trial rather than an overbroad prior restraint on all statements about HOTF's business."  The court, however, is interested in ensuring that the parties will do their best to avoid the need for the court to attempt to cure unnecessarily prejudicial lapses by the parties or their witnesses.

DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE THE USE OF DEROGATORY, DISPARAGING, AND/OR PEJORATIVE REFERENCES ABOUT HEAT

---

[1] In this regard, the court is in agreement with <u>Finjan, Inc. v. Blue Coat Systems, Inc.,</u> 2015 WL 4129193 (N.D. Cal), a case in which the judge granted a motion to keep out terms like "patent troll" and "patent assertion entity" under rule 403, but denied the motion as it related to "neutral, factual statements" describing the Plaintiff's company.

ON-THE-FLY, LLC,[2] is **GRANTED** as it relates to the use of terms that carry unnecessarily negative and prejudicial connotation but **DENIED** to the extent that it would prevent the parties from providing accurate descriptions of HOTF by the use of neutral and factual terminology.

## II.   DOCKET #460 - PLAINTIFFS' CONSOLIDATED MOTION *IN LIMINE* AND DOCKET #469 - MARATHON OIL'S JOINDER IN PLAINTIFFS' MOTION

This "consolidated" motion actually contains three separate motions.  Plaintiffs ask the court to prohibit HOTF and Super Heaters from offering: (1) evidence referencing eight "alleged mixer prototypes and alleged experimentation use" which HOTF "failed to disclose during discovery";(2) evidence of problems "or issues Mr. Hefley now asserts he confronted but failed to claim" in the '993 patent; and (3) the opinions of Dr. Steven Wilbers.  The court will consider them in the order presented.

### 1.   Evidence Relating to the Eight Mixer Prototypes and Experimental use

The record reflects that there is some truth to the Plaintiffs' allegation that this evidence was not properly produced in discovery.  Suppression of the evidence is a drastic sanction for failing to produce evidence, especially in cases, like this one, in which it appears the evidence was discoverable had the Plaintiffs' attorney merely followed through on his request that evidence of the type be preserved for his anticipated inspection.  The evidence relates to the issue of inequitable conduct in obtaining the original patent and will be received by the court on that issue, outside of the presence of the jury.  If, during the course of trial, it becomes apparent that the evidence is material to the issue of whether any claims

---

[2] Doc. #458.

of the patent's validity by HOTF and/or Super Heaters were made in bath faith or that it is relevant to the elements of tortious interference in contracts or business relationships, the court will revisit the issue of admission.

Plaintiffs' motion to exclude evidence of the prototypes and of experimental use is **DENIED,** subject to reconsideration if relevance to another issue is established**.**

### 2. Evidence of Problems/Issues Allegedly Confronted With Development of Product Not Claimed in '993 Patent

This evidence may be material to the United States Patent Office as it examines HOTF's latest attempts to get a registered patent. However, the court agrees with Plaintiffs that admission of this evidence would create confusion and unnecessary delay. If it becomes apparent during the course of trial that the evidence is somehow material to an issue, the court may reconsider its admission. The motion to exclude the evidence is **GRANTED.**

### 3. Opinions of Dr. Steven Wilbers

Dr. Steven Wilbers has been retained by Defendants as an expert to testify to the distinctive nature of the term "Heat On-The-Fly" on the issue of the validity of the registered trademark. The court **has already found as a matter of law that the phrase is descriptive.**[3] The remaining issue for the jury is whether the phrase has developed secondary meaning, which relates to whether customers of the product connect the phrase to a particular source. The jury will be instructed to weigh certain factors to decide whether Heat On-The-Fly has secondary meaning. These factors are consumer perception, advertisement, demonstrated utility, extent of use, exclusivity, copying, and

---

[3] Doc. #443, page 3 of 5.

5

actual confusion.  As the term is registered, the burden is on the Plaintiffs and Marathon to prove it lacks secondary meaning and that it is not entitled to trademark protection. Expert surveys showing whether or not the general public or,  in this case, the likely consumers of in-line heating associate the term "heat on-the-fly" to the Defendants as the particular source would be of particular assistance to the jury.[4]

Plaintiffs' motion to exclude the testimony of Dr. Wilbers is **DENIED,** but the court will limit any testimony of Dr. Wilbers, and of Plaintiffs' expert, Dr. Ronald Butters, to testimony related to whether the trademarked term has secondary meaning.  The court does not intend to allow the experts to testify to matters no longer at issue as such testimony is likely to lead to jury confusion.

### III.   DOCKET #462 - MARATHON'S MOTION *IN LIMINE* NO. 1 – MOTION TO EXCLUDE OR LIMIT TESTIMONY OF RICHARD S. CARDEN

As Defendants' expert on the patent application process, Mr. Carden will be allowed to testify in order to assist the jury in understanding the patent application process and to understand the nature of patents and patent enforcement.  Any testimony Mr. Carden might have expert knowledge in that would assist the jury on the elements of bad faith or tortious interference, or to rebut testimony raised in Plaintiffs' case-in-chief, is admissible. Testimony concerning the experimental use exception only relates to patent issues not before the jury and is excluded from the jury trial.  If the evidence is relevant to any issue, it is only the issue of inequitable conduct.  If the evidence at trial establishes relevance to the issue of inequitable conduct, the court will receive that evidence outside of the presence

---

[4] See, e.g., Gateway, Inc., v. Companion Products, Inc., 384 F.3d 503,508 (8th Cir. 200); EMPI, Inc., v. Iomed, Inc., 923 F. Supp. 1159, 1164 (D. Minn. 1996) (citing Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1358 (9th Cir. 1985).

of the jury.

Marathon's Motion *In Limine* No. 1 at **Docket # 462** is **DENIED IN PART** and

**GRANTED IN PART.**

## IV.   DOCKET #465 - MARATHON'S MOTION *IN LIMINE* NO. 2 – MOTION TO EXCLUDE TESTIMONY OF WARREN D. WOESSNER AND ANY RELATED TESTIMONY PROTECTED BY ATTORNEY-CLIENT PRIVILEGE

Mr. Woessner, as Defendants' expert on patents and the patent application process, is allowed to testify to assist the jury on the issues of bad faith and tortious interference. During the course of his deposition, Mr. Woessner offered speculation as to advice of counsel. Such testimony is speculative, inadmissible and not a necessary support of any legitimate expert opinion. Mr. Woessner may not testify as to what may or may not have been communicated between Mr. Hefley and his attorneys as that is testimony based on facts that Mr. Woessner had admitted were beyond his personal knowledge. He is not allowed to testify regarding any alleged experimental use by Mr. Hefley, or to anything related to Mr. Hefley's subjective intent, for similar reasons. Further, Mr. Woessner is not allowed to testify to his conclusions as to the validity of the '993 patent or to any other legal conclusions that are to be made by the court and are not an appropriate matter for expert testimony. Marathon's Motion *In Limine* No. 2 at **Docket #465** is **GRANTED IN PART.**

## V.   DOCKET #471 - DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE UNCORROBORATED ORAL TESTIMONY OF PRIOR PUBLIC USE OF THE INVENTION CLAIMED IN U.S. PATENT NO. 8,171,993

Corroboration "is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest."[5] As such, any oral testimony

---

[5] *E.g.*, <u>Finnigan Corp. v. International Trade Commission</u>, 180 F.3d 1354, 1369 (Fed Cir. 1999).

of prior public use of the '993 patent must be corroborated by reliable evidence.  Although Plaintiff and Marathon indicate that they do not intend to call these witnesses at trial and urge the court to deny the motion as moot, the court is inclined to grant the motion. Further, the documents purporting to show prior use by Austin Peitz are no more reliable than the testimony of Austin Peitz, who the Plaintiffs do not intend to call as a witness, so the documents are excluded.

Defendants Motion *In Limine* at **Docket #471** is **GRANTED.**  If the issues of corroboration are addressed, or if the testimony becomes relevant on an issue unrelated to the validity or invalidity of the patent, the  proponent of the evidence shall bring it to the court's attention prior to offering it.

## VI.   DOCKET #473 - DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE HEARSAY STATEMENTS

The court grants this motion only as to statements by Mr. Lyles regarding the validity of the '993 patent.  Mr. Lyles is not an expert in patent law and his opinion as to the validity of the patent is immaterial.  Further, it communicates a legal conclusion.

The other statements Defendants seek to exclude are not hearsay because they are not being offered for the truth of the matter stated and they have independent legal significance on the tortious interference claims.  Based on the information before the court at this time, it appears there is contested evidence that might show some statements made by Ron Lyles are admissions of a party opponent.  This issue can be determined at trial once the court has had the opportunity to hear the relevant foundational testimony.

Defendants' motion to exclude the "hearsay" at **Docket #473** is **GRANTED IN PART** only as to Ron Lyles's opinions on the validity of the patent.  In all other respects,

Defendants' motion is **DENIED.**

## VII.  DOCKET #475 - DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE SUMMARY JUDGMENT ORDER AND EVIDENCE RELATING TO THE REEXAMINATION OF U.S. PATENT NO. 8,171,993

The court will  instruct the jury on the nature and posture of the case in order to give the jurors sufficient context to analyze the tortious interference claims.  Specifically, the jury will be advised that: "During the times at issue in this case, Heat On-The-Fly owned a federally registered patent on a process used to heat  water for use in oil extraction.  Heat On-The-Fly was in the business of licensing the use of the patent.  Questions arose regarding the validity of Heat On-The Fly's patent.  The parties vigorously dispute the validity of the patent but the validity of the patent is not for you to finally resolve.   The validity of the patent is a question that is currently pending in other forums and is not before you." This should provide sufficient context for the jury to analyze the parties evidence relating to the tortious interference claims.

The validity of the patent is not germane to the request for declaratory judgment on the trademark.

Defendants' motion at **Docket #475** is **GRANTED.**

## VIII.  DOCKET #477 - DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE CERTAIN EXPERT TESTIMONY FROM PLAINTIFFS' AND THIRD-PARTY DEFENDANTS' EXPERT WITNESS

Plaintiffs' are entitled to prove their actual damages from any alleged tortious interference.  Mr. Voth's testimony, to the extent that it is not speculative and is based on the actual history and capabilities of the Plaintiffs' businesses, may be of some assistance to the jury.  Defendants' objections go to the weight of the evidence and they are free to challenge the evidence through cross-examination, by their own offer of evidence, and in

argument.  Mr. Voth's Supplemental Capacity Schedule was timely disclosed and may be used in his direct examination.

Mr. Kunin is an expert in patent law and may testify as to the patent application process, issues related to the conduct of the applicant, and general patent enforcement issues.  The court cautions Plaintiffs to limit Mr. Kunin's testimony to matters that are relevant to the issues that remain before the court and holds Plaintiffs to their promise that Mr. Kunin will not provide "ultimate legal conclusion testimony".

Defendants' motion at **Docket #477** is **DENIED.**

<u>**CONCLUSION**</u>

In conclusion, Defendants' motion *in limine* at **Docket #458 is GRANTED IN PART and DENIED IN PART;** Plaintiffs' consolidated motion *in limine* at **Docket #460** and Marathon Oil's joinder in the motion at **Docket #469** is **GRANTED IN PART and DENIED IN PART;** Marathon's motion *in limine* at **Docket #462 is DENIED IN PART and GRANTED IN PART;** Marathon's motion *in limine* at **Docket #465 is GRANTED IN PART;** Defendants' motion *in limine* at **Docket #471 is GRANTED;** Defendants' motion *in limine* at **Docket #473 is GRANTED IN PART and DENIED IN PART;** Defendants' motion *in limine* at **Docket #475 is GRANTED;** and Defendants' motion *in limine* at **Docket #477 is DENIED.**

**IT IS SO ORDERED.**

Dated this 13th day of August, 2015.

*/s/   Ralph R. Erickson*
Ralph R. Erickson, Chief Judge
United States District Court

10